IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARK M. LONG,

      Plaintiff,

v.

GARY MOHR, et al.,

      Defendants.

Case No. 2:15-cv-1616

JUDGE GEORGE C. SMITH
Magistrate Judge Jolson

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's "Dispositive Motion" (Doc. 83) and Defendants' Motion for Summary Judgment (Doc. 95). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion be **DENIED** and Defendants' Motion for Summary Judgment be **GRANTED**.

### I.    PROCEDURAL BACKGROUND

Plaintiff, Mark M. Long, an inmate at North Central Correctional Institution ("NCCI"), filed this civil rights action *pro se* on May 6, 2015, against 41 employees of Madison Correctional Institution ("MaCI") and the Ohio Department of Rehabilitation and Correction ("ODRC"). The sole claims remaining are Plaintiff's deliberate indifference claims against Dr. Andrew Eddy and Dr. Nathan Yost for "vot[ing] to deny" him hip replacement surgery, against Dr. Elliot Neufeld, Nurse and Health Care Administrator Karen Oppy, and Nurses Robert Magnuson and Sherri Curtiss for failing to provide him pain medication and a cane, and against Dr. James Rannes for failing to provide him with adequate dental treatment. (Doc. 42, at 5–7).

Plaintiff filed his "Dispositive Motion" on March 2, 2017 (Doc. 83), which the Court construes as requesting summary judgment. Defendants likewise moved for summary judgment.

1

(Doc. 95). Plaintiff filed a 243-page opposition, consisting of a 63-page summary and 180-page brief (Doc. 103), followed by three additional documents collectively consisting of 148 pages. (Docs. 104–106).

## II. FACTUAL BACKGROUND

Plaintiff suffers from necrosis of the left hip, which occurs when the hip "bone is not receiving the blood that it needs, and the smooth surface of the hip becomes not smooth due to a lack of blood, which can cause friction and inflammation[.]" (Doc. 95, Neufeld Dec. ¶ 8). Plaintiff also suffers from neck masses, chest pain, cardiomyopathy, anxiety, and dental problems. (*Id.*, Neufeld Dec. ¶¶ 6, 8, 10; Curtiss Dec. ¶ 12; Magnuson Dec. Ex. 1; Rannes Dec. ¶ 6). His claims arose while incarcerated at MaCI between May 1, 2013 and April 5, 2016. (*Id.*, Neufeld Dec. ¶ 7; Eddy Dec. ¶ 6). As noted, seven defendants remain in this action. The Court addresses each defendant's relationship to this case in turn.

### A. Dr. Neufeld

Dr. Neufeld first examined Plaintiff on June 17, 2013, for complaints of painful urination. (*Id.*, Neufeld Dec. ¶ 8). When Dr. Neufeld explained to Plaintiff that he found just a trace amount of blood in his urine, Plaintiff became agitated, accused him of not doing his job properly, and terminated the visit. (*Id.*). Dr. Neufeld found Plaintiff's behavior concerning because it was consistent with patients who exaggerate or fabricate pain in order to obtain pain medication. (*Id.*).

Dr. Neufeld continued to treat Plaintiff, or is aware of Plaintiff's treatment, over time, which included:

- examining him on July 15, 2013, for left hip problems. Dr. Neufeld prescribed a cane, a sitting restriction, and the pain reliever Elavil in addition to the prescription pain relievers Plaintiff was already taking. (*Id.*, Neufeld Dec. ¶ 9);

- examining him on August 23, 2013, for chest pain. Dr. Neufeld instructed Plaintiff to continue an increased dosage of pain medication. (*Id*., Neufeld Dec. ¶ 10);

- reporting the treating physician's examination of Plaintiff on September 18, 2013, for left hip pain. The treating physician ordered and reviewed Plaintiff's X-ray and attempted to prescribe him the anti-inflammatory drug meloxicam for pain management. Plaintiff declined the prescription. (*Id.*, Neufeld Dec. ¶ 11);

- examining him on October 23, 2013, for left hip pain, although he noted Plaintiff appeared to be walking well. (*Id.*, Neufeld Dec. ¶ 12);

- renewing his cane restriction on January 7, 2014. (*Id.*, Neufeld Dec. ¶ 13);

- examining him on July 25, 2014, for neck pain and growths. (*Id*., Neufeld Dec. ¶ 14);

- renewing his prescription for pain relievers Naproxen, Elavil, and Atenolol on August 8, 2014. (*Id.*, Neufeld Dec. ¶ 15);

- examining him on August 15, 2014, for hip pain. Dr. Neufeld noted that Plaintiff was able to enter and exit the appointment using his cane, with no visible signs of pain. Nevertheless, Plaintiff requested "stronger" pain medication and an MRI of his hip. Dr. Neufeld prescribed him the stronger pain reliever Ultram and explained the process to authorize an MRI. In response, Plaintiff became hostile and threatened a lawsuit. (*Id*., Neufeld Dec. ¶ 16);

- examining him on September 15, 2014. Dr. Neufeld increased Plaintiff's Ultram based on Plaintiff's assertion that it was helping, but not eliminating, the pain. (*Id*., Neufeld Dec. ¶ 17).

- examining him on November 21, 2014, for numbness in his hands and right leg pain. Plaintiff received an X-ray of his right hip, which returned normal. (*Id*., Neufeld Dec. ¶ 18);

- prescribing him Ibuprofen as an additional pain reliever on March 31, 2015. (*Id*., Neufeld Dec. ¶¶ 18–19);

- examining him on May 14, 2015, for left hip pain. Dr. Neufeld offered Plaintiff a cortisone injection to treat his pain, in addition to the Elavi, Ultram, and Ibuprofen, but Plaintiff declined. (*Id*., Neufeld Dec. ¶ 20); and

- examining him on May 26, 2015, for back and elbow pain. Dr. Neufeld

ordered and reviewed an X-ray, which revealed minor arthritis in his spine, but no elbow problem. (*Id.*, Neufeld Dec. ¶ 21).

During each of these visits, Dr. Neufeld "educated [Plaintiff] on his condition, and how to improve his quality of life, explained the treatment plan, and attempted to get him to verbalize his understanding." (*Id.*, Neufeld Dec. ¶ 7).

Based on his treating relationship with Plaintiff and his experience practicing medicine for nearly forty years, Dr. Neufeld opined that:

> To a reasonable degree of medical certainty, Inmate Long did not need a hip replacement in his left hip during his incarceration at MaCI, or a consultation with an orthopedic specialist regarding the same. While X-rays did show that Inmate Long had Avascular Necrosis of the left hip, the condition of the hip was not bad enough to warrant a full hip replacement, or a consultation. Inmate Long was mobile (at first without assistance, then with a cane) to the point where the condition of the hip was not bad enough to keep him from moving, and the numerous pain medications that he was prescribed would have helped him deal with any discomfort that he was experiencing. Inmate Long remained mobile throughout his incarceration at MaCI, and any discomfort that he felt was controlled with drugs.

(*Id.*, Neufeld Dec. ¶ 7(b)).

### B. Dr. Eddy

As the ODRC's Medical Director and Dr. Neufeld's supervisor, Dr. Eddy is familiar with Plaintiff's medical records. (Doc. 95, Eddy Dec. ¶¶ 2–4). Dr. Eddy concurred with Dr. Neufeld's recommendation, opining that, "[t]o a reasonable degree of medical certainty, Inmate Long did not need a hip replacement in his left hip . . . ." (*Id.*, Eddy Dec. ¶ 10). He likewise opined that Plaintiff's condition did not warrant a consultation with an orthopedic specialist or an MRI because the degeneration of his hip "had not proceeded to the point where it needed surgical correction." (*Id.*). Dr. Eddy stated that an MRI would simply reveal what Plaintiff's X-ray and examinations had—that Plaintiff had avascular necrosis. (*Id.*). Dr. Eddy determined that, given Plaintiff's condition, the medical restrictions, support devices (such as a cane), and

pain medications were sufficient to combat any associated discomfort. (*Id.*).

### C. Nurse Magnuson, Nurse Curtiss, and Nurse Oppy

During his medical examinations at MaCI, Plaintiff was seen first by a nurse, and then by a doctor. (Doc. 95, Magnuson Dec. ¶¶ 6, 25). The nurses at MaCI could perform only certain services and were not authorized to prescribe medication, order medical consultations or procedures, or order medical restrictions (except in the case of an emergency). (*Id.*, Magnuson Dec. ¶¶ 3–5; Curtiss Dec. ¶¶ 3–5).

Although Nurse Magnuson provided Plaintiff with medical care on sixteen separate occasions, Nurse Magnuson never observed Plaintiff exhibiting signs of distress or the need for emergency treatment. (Doc. 95, Magnuson Dec. ¶¶ 8–24). To the contrary, Nurse Magnuson reported that Plaintiff's blood pressure was consistently low (inconsistent with someone in severe pain), and he walked outside the infirmary without his cane. (*Id.*, Magnuson Dec. ¶¶ 6, 11, 14, 15, 25). Accordingly, Nurse Magnuson believed that Plaintiff was exaggerating his pain, perhaps in an effort to obtain additional pain medication and restrictions to make prison life easier. (*Id.*, Magnuson Dec. ¶ 25).

Nurse Curtiss interacted with Plaintiff on seven separate occasions. (Doc. 95, Curtiss Dec. ¶¶ 6–14). Like Nurse Magnuson, Nurse Curtiss observed Plaintiff walking of his own accord without difficulty (first with no assistance, and later with a cane). (*Id.*). Nurse Curtiss additionally observed that Plaintiff had a full range of motion in his hip and never demonstrated signs of severe pain or symptoms requiring emergency treatment. (*Id.*). Nurse Curtiss also believed that Plaintiff may have been exaggerating the amount of pain he was experiencing. (*Id.*).

Nurse Oppy was the Health Care Administrator ("HCA") responsible for processing

5

Plaintiff's grievances. (Doc. 95, Oppy Dec. ¶¶ 2–7). In doing so, Nurse Oppy reviewed Plaintiff's medical file and denied each of his claims alleging inadequate medical and dental treatment. (*Id.*, Oppy Dec. ¶¶ 7–8). In other words, Nurse Oppy found that Plaintiff's medical and dental treatment was consistent with ODRC and MaCI policies. (*Id.*, Oppy Dec. ¶ 8(a)).

### D. Dr. Rannes

Dr. Rannes, MaCI's Dental Director, provided Plaintiff with dental care. (Doc. 95, Rannes Dec. ¶¶ 2, 8–20). Pursuant to ODRC policy, an inmate is provided with a dental screening within seven days of admission at an institution. (*Id.*, Rannes Dec. ¶ 7). Inmates are eligible for only emergency dental treatment during the first year of incarceration but, after the first year, are authorized to request a dental exam and regular cleaning. (*Id.*, Rannes Dec. ¶ 8).

ODRC's policy states that "[f]abrication of partial dentures shall be done at the discretion of the institution dentist only" and is prohibited if, *inter alia*, the inmate has "[e]ight or more posterior teeth in occlusion, to include bicuspid occlusion." (*Id.*, Rannes Dec. ¶ 24) (citing ODRC Policy at (VI)(G)(5)(b)). Dr. Rannes utilized his discretion to deny Plaintiff's request for partial dentures because Plaintiff's was still able to chew his food despite missing some teeth, and because he had eight or more posterior teeth in occlusion. (*Id.*).

Although Dr. Rannes received a consultation request on May 14, 2013, shortly after Plaintiff's admission to MaCI, he found that Plaintiff merely had poor dental hygiene that did not constitute a medical emergency. (*Id.*, Rannes Dec. ¶ 8(a)(1)). Dr. Rannes explained that, once Plaintiff was eligible for non-emergency dental services, Plaintiff received regular dental cleanings and exams. (*Id.*, Rannes Dec. ¶¶ 9–20). During those cleanings, Plaintiff received instruction on how to improve his oral hygiene. (*Id.*, Rannes Dec. ¶¶ 9–11). Plaintiff also received a spacing adjustment at his request, in addition to nine fillings. (*Id.*, Rannes Dec. ¶ 12).

Although Dr. Rannes informed Plaintiff that he could request to have a tooth extracted if he was experiencing pain, Plaintiff made no such request. (*Id.*, Rannes Dec. ¶ 20).

### E. Dr. Yost

Although employed by ODRC, Dr. Yost did not work at MaCI during the relevant time; nor has he ever meet Plaintiff, reviewed his medical records, or become involved in Plaintiff's medical treatment in any way. (Doc. 95, Yost Dec. ¶ 3; Eddy Dec. ¶ 9(c)). Other than Plaintiff's conclusory statement that Dr. Yost "voted" to deny him a hip replacement, there is nothing to connect him to the events relevant to this case.

## III. STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment (Doc. 95)

Defendants argue that the Eleventh Amendment bars Plaintiff's claims against them in their official capacity and that Plaintiff has failed to establish a genuine issue of material fact with respect to whether Defendants were deliberately indifferent to his medical needs. The Court agrees. Because the Court recommends granting summary judgment on those bases, the Court need not address Defendant's additional arguments.

#### 1. Eleventh Amendment Immunity (Official Capacity Claims)

The Eleventh Amendment to the United States Constitution bars suits against either a state or agencies of a state by citizens of that state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Under certain circumstances, a suit against an individual state official may be deemed to be a suit against the state and therefore barred by the Eleventh Amendment. *Id.* The primary test for determining whether the state is the real party in interest is whether the source of any funds from which a damage award would be paid would be the state treasury. *Id.* Additionally, if an individual is alleged to have only vicarious liability as a result of his official position, any damage award made (if one were permissible) would necessarily be against the office rather than the officeholder and therefore be an award against the state. *See Ford Motor Co. v. Dep't of the Treasury*, 323 U.S. 459, 462 (1945); *see also Hall v. Med. Coll. of Ohio*, 742 F.2d 299, 301 (6th Cir. 1984). When the Eleventh Amendment bars a suit, the Court lacks jurisdiction and the case must be dismissed without prejudice. *Cf. Gwinn Area Cmty. Sch. v. Michigan*, 741 F.2d 840, 846–47 (6th Cir. 1984).

8

Plaintiff does not specify whether his claims are against Defendants in their official capacities. However, for the reasons stated above, any official capacity claims cannot proceed in this Court because such claims are deemed to be brought against the State of Ohio. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983"). Consequently, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** as to any official capacity claims.

### 2. Deliberate Indifference to Serious Medical Needs (Individual Capacity Claims)

To establish a prima facie claim under §1983, a plaintiff must show: (1) that defendants acted under color of state law, and (2) that defendants deprived plaintiff of a federal statutory or constitutional right. *See, e.g.*, *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992) (per curiam). Conclusory allegations are insufficient to state a claim under § 1983. *Chapman v. Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

The parties agree that Defendants were acting under color of state law. The dispute thus lies in whether Defendants deprived Plaintiff of a federal statutory or constitutional right. The Eighth Amendment to the United States Constitution protects individuals against cruel and unusual punishment, and includes the rights of prisoners to be provided with adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Such a claim has an objective and a subjective component. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective prong "requires a plaintiff to show that the medical need at issue is sufficiently serious." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citing *Blackmore*, 390 F.3d at 896) (quotations omitted). "A medical need is sufficiently serious if it

has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Blackmore*, 390 F.3d at 897).

The subjective prong requires the Court to determine whether "prison officials ha[d] a sufficiently culpable state of mind in denying medical care." *Alspaugh*, 643 F.3d at 169 (citing *Blackmore*, 390 F.3d at 895). "Under the subjective component, the plaintiff must establish that the defendant knew of or disregarded an excessive risk to inmate health or safety." *Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009) (citing *Blackmore*, 390 F.3d at 895). Mere acts of negligence by a prison official are insufficient to establish deliberate indifference. *Mabry v. Antonini*, 289 F. App'x 895, 902 (6th Cir. 2008). Moreover, a prisoner does not state a valid Eighth Amendment claim when "his claim amounts to a difference of opinion between him and the prison health care providers and a dispute over the adequacy of his treatment." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 1976).

The Sixth Circuit has also explained that in the context of deliberate indifference claim:

> '[w]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.' *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976). Where a prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.' *Id.* However, it is possible for medical treatment to be 'so woefully inadequate as to amount to no treatment at all.' *Id.*

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).

As described above, Plaintiff's complaints fall into two basic categories. He claims that he has received inadequate medical care for his necrosis of the left hip and the pain it causes as well as inadequate dental care.

10

### a. Necrosis of the Hip and Pain Management

The parties do not dispute Plaintiff's suffers from necrosis of the left hip. However, an inmate's diagnosis does not end the inquiry as to whether the need was "sufficiently serious." *Blackmore*, 390 F.3d at 895. Beyond a mere diagnosis, the medical need must reach a requisite level that poses a "substantial risk of serious harm." *Id.* Here, Plaintiff complains that he was denied a hip replacement despite his diagnosis of necrosis of the hip, which caused him injuries and "unbearable" pain. He further alleges that he experienced great suffering due to Defendants' failure to manage his pain.

The record, however, shows that Plaintiff received substantial treatment for his necrosis. Specifically, Dr. Neufeld treated Plaintiff on at least ten occasions; Plaintiff received a cane and a sitting restriction; and Plaintiff was prescribed pain medicine. Plaintiff was also observed by a number of prison officials walking on his own, both with and without the use of a cane, with no visible signs of distress or struggle.

Ultimately, during the course of multiple medical visits, the medical staff at MaCI and ODRC concluded that, although necrosis was present, the condition was not sufficiently serious to require an operation or consultation at that time. That those doctors believed a hip replacement was medically unnecessary is not evidence of medical indifference or a substantial risk of serious harm—but rather a difference in opinion. "The law in this Circuit is clear that mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not rise to the level of deliberate indifference." *Knop v. Warren*, No. CIV.A. 14-10185, 2015 WL 1132652, at *8 (E.D. Mich. Feb. 4, 2015) (citing *Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004); *see also Allison v. Martin*, No. 09-cv-10099, 2009 U.S. Dist. LEXIS 79202, at *15 (E.D. Mich. Sept. 2, 2009) ("In cases

where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment.").

Moreover, despite Plaintiff's allegations regarding Defendant's failure to provide him adequate pain management, the record undisputedly shows that he was prescribed pain medication throughout his incarceration at MaCI. Indeed, on a number of occasions, Dr. Neufeld granted Plaintiff's request for an increased dosage or a variation in drugs. Although the medication received may not have been exactly the medication Plaintiff wanted, ignoring Plaintiff's "preference" does not amount to a deliberate indifference claim. *See Knop*, No. CIV.A. 14-10185, 2015 WL 1132652 (holding that although Plaintiff "might not have received the exact medication she preferred, or on the exact timeline she desired," that was not enough to state a medical indifference claim); *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) (holding that inmate and medical provider's disagreement "over the preferred medication to treat [inmate's] pain . . . does not support an Eighth Amendment claim" and noting that "[t]he district court properly declined to second-guess [the doctor's] medical judgment").

Further, it is well-settled that prisoners are not entitled to unfettered access to the medical treatment of their choice. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). It is also worth noting that the Eighth Amendment does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)); *see also Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) ("Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'") (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

Consequently, viewing the evidence in light most favorable to Plaintiff, the undersigned concludes that his treatment was not so "woefully inadequate as to amount to no treatment at all." *Davis v. Mohr*, No. 2:15-CV-2739, 2017 WL 3288154, at *3 (S.D. Ohio Aug. 2, 2017) (quoting *Westlake*, 537 F.2d at 860 n.5). Plaintiff, at most, alleges disagreement with the medical treatment that Plaintiff received during his incarceration. Courts have consistently held that this is insufficient to prove an Eight Amendment claim. *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). More to the point, the record shows that Plaintiff received constitutionally adequate care for his necrosis of the hip and attendant pain.

### b. Dental Care

Plaintiff's dental care claims suffer the same flaw. "'A cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). The record reflects Plaintiff was treated and examined by Dr. Rannes at least eight times. In Plaintiff's case, there is no indication in the record that he complained of severe tooth or mouth pain. Dr. Rannes' declaration asserts that generally, a filling coming loose is not considered to be a dental emergency and would not cause enough discomfort to necessitate emergency treatment. Dr. Rannes also observed that because Plaintiff had "eight or more posterior teeth in occlusion" that he was not eligible for partial dentures under ODRC policy. Moreover, despite missing some teeth, Plaintiff was able to chew his food as necessary with the remaining teeth. Plaintiff "has

13

failed to provide this court with any medical evidence to dispute this diagnosis," and the Court will not second-guess Dr. Rannes regarding the adequacy of his treatment. *Davis v. Powell*, 110 F. App'x 660, 662 (6th Cir. 2004); *see also Wilson v. Wilkinson*, 62 F. App'x 590, 592 (6th Cir. 2003) ("[T]o the extent that [plaintiff] complains of the adequacy of the treatment provided him, such claims amount to no more than dental malpractice which does not give rise to a constitutional violation"). Thus, Plaintiff cannot establish that his dental needs were "sufficiently serious" so as to state an Eighth Amendment claim. *See id.*

The Court additionally notes that, even if Plaintiff could establish that his medical and dental treatment was somehow objectively sub-standard (which he cannot), there is no evidence that Defendants had the requisite reckless or wanton state of mind to establish the subjective prong of the deliberate indifference analysis. *See Rouster v. Cty. of Saginaw*, 749 F.3d 437, 447 (6th Cir. 2014) (holding that "[t]he plaintiff bears the burden of proving subjective knowledge"). Indeed, Plaintiff fails to allege any facts which would show that Defendants had a sufficiently culpable state of mind. *See Robbins v. Black*, 351 F. App'x 58, 62–63 (6th Cir. 2009) (explaining that the subjective "standard calls for a state of mind that evinces 'deliberateness tantamount to intent to punish,'" quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 1994)). To the contrary, during his time at MaCI, the medical staff treated Plaintiff on numerous occasions in a variety of ways. Consequently, Plaintiff has failed to allege any facts "plausibly suggesting [that] any Defendant had the subjective state of mind necessary to support a constitutional 'deliberate indifference' claim." *Mays v. Merlak*, No. 4:16CV0882, 2016 WL 8674660, at *2 (N.D. Ohio July 29, 2016).

In sum, Defendants have established that no genuine dispute as to any material fact exists in this case. Consequently, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** as to any individual capacity claims.

### B. Plaintiff's Summary Judgment Motion (Doc. 83)

Plaintiff's failure to provide evidence in support of his deliberate indifference claim also means that he cannot meet the standard for summary judgment on his own dispositive motion (Doc. 83). The Court requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009), and Plaintiff has not provided more than that here. Consequently, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 83) be **DENIED**.

## V. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 83) be **DENIED** and Defendants' Motion for Summary Judgment (Doc. 95) be **GRANTED**. The undersigned further **RECOMMENDS** that this case be **TERMINATED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, an also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: October 16, 2017                                                              /s/ Kimberly A. Jolson
                                                                                              KIMBERLY A. JOLSON
                                                                                              UNITED STATES MAGISTRATE JUDGE